**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0347-18T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CURTIS J. MCRAE, a/k/a
CURTIS MCCRAE,

      Defendant-Appellant.

_____

Submitted February 26, 2020 – Decided February 2, 2021

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 14-09-0774, 14-10-0799, and 14-10-0838.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Curtis J. McCrae appeals from the order of the Criminal Part that denied his post-conviction relief (PCR) petition.  We affirm.

In September and October 2014, defendant was charged on three separate indictments with possession of marijuana with intent to distribute and distribution of marijuana, each within 1000 feet of a school.  These offenses occurred in the City of Paterson on April 17, 2014,[1] May 20, 2014,[2] and July 27, 2014.[3]  On February 18, 2015, defendant negotiated a comprehensive plea agreement with the State that resolved the charges in all three indictments.

---

[1] Indictment 14-10-0799-I charged defendant with fourth degree possession of marijuana in a quantity in excess of fifty grams, N.J.S.A. 2C:35-10(a)(3); third degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1); and third degree possession of marijuana with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7.

[2] Indictment 14-10-0838-I charged defendant with: third degree distribution of marijuana, N.J.S.A. 2C:35-5(a)(l) and N.J.S.A. 35-5(b)(l2); third degree distribution of marijuana within 1000 feet of school property, N.J.S.A. 2C:35-7; and two counts of third degree possession of marijuana with intent to distribute, N.J.S.A. 2C35-5(a)(1); and third degree possession of marijuana with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7.

[3] Indictment 14-09-0774-I charged defendant with: fourth degree possession of marijuana in a quantity in excess of fifty grams, N.J.S.A. 2C:35-10(a)(3); third degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1);

(continued)

A-0347-18T4

Defendant agreed to plead guilty to count two of Indictment 14-10-0838-I, which charged him with third degree distribution of marijuana within 1000 feet of school property. In exchange, the State would dismiss the remaining counts and recommend the court sentence defendant to a term of imprisonment not to exceed four years, with eighteen months of parole ineligibility. Defendant agreed to plead guilty to count three of Indictment 14-09-0774-I, which charged defendant with third degree possession of marijuana. The State agreed to dismiss the remaining counts and recommend the court sentence defendant to a concurrent term of one year imprisonment. Finally, with respect to Indictment 14-10-0779-I, defendant agreed to plead guilty to third degree possession of marijuana with intent to distribute. The State agreed to dismiss the remaining counts and recommend the court sentence defendant to a three-year term of imprisonment to run concurrent with the other two sentences. This resulted in an aggregate term of four years with eighteen months of parole ineligibility.

The record of the plea hearing shows the judge asked defendant a series of questions to confirm defendant concurred with the terms of the plea

---

and third degree possession of marijuana with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7.

A-0347-18T4

agreement as described by the prosecutor.  The judge also asked defendant the following questions with respect to his age and level of education:

> THE COURT: Okay. Can you tell me, sir, how old you are?
>
> DEFENDANT: Twenty-nine.
>
> THE COURT: And how far have you gone in school, sir?
>
> DEFENDANT: I finished high school, Your Honor.
>
> THE COURT: Okay. And where was that, sir?
>
> DEFENDANT: In Jamaica.
>
> COURT: Jamaica, okay.  Now, do you read, write and understand English?
>
> DEFENDANT: Yes.

Defendant completed the plea form with the assistance of his attorney. The plea form included question 17, which is designed to establish a defendant's immigration status and to apprise the defendant of the possible immigration ramifications of his/her decision to plead guilty.  The form also specifically affords a defendant the opportunity to consult with an attorney familiar with immigration law.  Question 17a asks: "Are you a citizen of the United States?" Here, defendant circled "No."

The judge directly addressed the issue of defendant's immigration status in the course of the plea hearing:

> THE COURT: Are you a United States citizen?
>
> DEFENDANT: No, Your Honor.
>
> THE COURT: Okay. Now, do you understand that by not being a U.S. citizen, this guilty plea can result in your removal from the United States, and it may stop you from being able to legally enter or reenter the United States; do you understand that?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that you have the right, if you choose, to seek individualized legal advice from an attorney about the effect your guilty plea will have on your immigration status; do you understand that?
>
> DEFENSE COUNSEL: Judge, he actually spoke to an immigration attorney already, Judge.
>
> THE COURT: Oh, you did.
>
> DEFENSE COUNSEL: He did.
>
> THE COURT: And so you you've discussed with an immigration attorney the potential immigration consequences of your plea?
>
> DEFENDANT: Yes.
>
> THE COURT: Okay. And did the attorney give you any kind of advice concerning the potential consequences of your immigration status because of this plea?

A-0347-18T4

DEFENDANT: Yes, Your Honor.

THE COURT: And having received that information from your immigration attorney, do you still wish to plead guilty?

DEFENDANT: Yes, sir.

The record also shows the trial judge granted defendant's request to adjourn the sentencing hearing to permit him to consult with an immigration attorney. At the judge's request, defense counsel confirmed at the April 10, 2015 sentencing hearing that defendant "afforded himself of that opportunity." Furthermore, the judge again addressed the immigration issue directly with defendant at the sentencing hearing:

THE COURT: Okay. Mr. McRae, do you understand as a result of these convictions being entered, you may very well be deported from the United States?

DEFENDANT: Yes.

THE COURT: And what is your native country, sir?

DEFENDANT: Jamaica.

COURT: Okay. Do you realize that if you are deported to Jamaica, this may very well prevent you from either entering or reentering the United States again? Do you understand that?

DEFENDANT: Yes, Your Honor.

A-0347-18T4

THE COURT: Now, you did have a full opportunity to discuss the immigration consequences of the plea that you entered with an immigration attorney?

DEFENDANT: Yes, Your Honor.

THE COURT: And he told you what the potential consequences of these convictions would be on your immigration status?

DEFENDANT: Yes, Your Honor.

THE COURT: And after being advised of that by your immigration attorney, you still wish to proceed with this matter; is that correct?

DEFENDANT: Yes, Your Honor.

Notwithstanding the terms of the plea agreement which exposed defendant to an aggregate custodial term of four years, with eighteen months of parole ineligibly, the judge sentenced defendant to a five-year term of probation. The judge provided the following explanation for his decision:

> While the offenses were all separate offenses, they did take place within a period essentially of three months. So, relatively close in point of time.
>
> I do think, however, that in this case, over the objections of the Prosecutor, I'm going to give him a chance of probation, and this is why I'm doing it:
>
> Number one, there is a likelihood here that Mr. McRae is going to be deported and be sent back to Jamaica, so he will no longer be a headache for the authorities here. But more importantly, his probation is going to be for a

period of five years, and if he does misstep, then he will go to prison, and he's going to go for a lot longer than what would have been the recommended terms here by the State.

Defendant did not file a direct appeal challenging any aspect of the plea hearing or the sentence imposed by the court. However, on or about August 4, 2017, defendant filed a pro se PCR petition. In a handwritten statement of reasons, defendant stated he received ineffective assistance of counsel

> in providing bad [advice] to enter a plea of guilty and failing to investigate case, interview witnesses. Counsel failed to advise on the immigration consequences of the guilty plea resulting in deportation proceeding. Petitioner would have gone to trial to challenge the coerce[d] plea of guilty when he is innocent. (emphasis added).

The PCR judge, who was not the same judge who presided over the plea and sentencing hearings, assigned defendant counsel to represent him in the prosecution of the PCR petition. PCR counsel submitted a brief and defendant's certification in which he averred, in relevant part:

> I can't read and write. Everything, every document I said yes too it was because I was told to. I felt like my best interest was not in mind. I needed my lawyer to have a little compassion, instead everything seemed rushed.
>
> . . . .

> It was not until I was arrested and detained by ICE in December of 2015, long after I entered the guilty plea when I learned the other real consequences from the plea.
>
> If I had known at the time that if I just plead guilty I could be deported I would not have just taken the plea as my attorney insisted, I would have fought the charges and taken the case to trial as this is the only country I have known as a home. (emphasis added).

The matter came before the PCR judge for oral argument on August 30, 2018. Despite defendant's statements under oath at the plea hearing that he could read, write, and understand the English language, and had graduated from high school, PCR counsel argued that "the main points here have to do with his illiteracy in the sense that he can't read and write, so he depended on his attorney to explain to him what the forms meant and so on[.]"

The PCR judge reviewed the procedural history of the case, as well as the record of the plea and sentencing hearings and found defendant had not established a prima facie case of ineffective assistance of counsel. The PCR judge found defendant's contention attacking the effectiveness of defense counsel was "without merit." The judge noted that defendant faced a potential fifteen-year custodial sentence and received a five-year term of probation. The judge also found the State had substantial evidence against defendant. The May 20, 2014 indictment was predicated on a hand-to-hand distribution of marijuana

observed by police officers. Defendant was apprehended with marijuana on his person.

The July 27, 2014 offenses were based on surveillance of drug transactions in which defendant had in his possession twenty-seven bags of marijuana and engaged in the distribution of this marijuana within 1000 feet of School No. 26. The PCR judge concluded that defendant's "bald assertion" of defense counsel's failure to investigate and interview witnesses were "without explanation . . . as to what would have been ascertained, [and] fails to demonstrate ineffective assistance of counsel."

Finally, with respect to defendant's assertion of ignorance concerning the consequences of his immigration status, the PCR judge found there was overwhelming evidence that defendant was completely aware of the likelihood that he would be deported. The PCR judge held that defendant did not establish a prima facie case of ineffective assistance of counsel.

Against this record, defendant raises the following argument on appeal.

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INFORM HIM ADEQUATELY OF THE

DEPORTATION CONSEQUENCES OF HIS PLEA
AND FAILING TO FILE A DIRECT APPEAL.

We review a claim of ineffective assistance of counsel under the two-prong test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and subsequently adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, defendant must demonstrate that defense counsel's performance was deficient. Strickland, 466 U.S. at 687. Second, he must show there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In determining a claim of ineffective assistance of counsel in a case in which a defendant pled guilty, "the issue is whether it is ineffective assistance of counsel for counsel to provide misleading, material information that results in an uninformed plea, and whether that occurred here." State v. Smullen, 437 N.J. Super. 102, 108-09 (App. Div. 2014) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139-40 (2009)).

Against these legal standards, we discern no legal basis to disturb the PCR judge's findings and ultimate legal conclusions. The record we have described at length here shows that defendant's claims attacking the effectiveness of his attorney were completely baseless and lack sufficient legal merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0347-18T4